DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**FABIOLA RAMIREZ,**
Appellant,

v.

**DOMINICK MARZANO,**
Appellee.

No. 4D2023-1170

[April 3, 2024]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Lorena V. Mastrarrigo, Judge; L.T. Case No. FMCE19-007440.

Natalie P. Mescolotto of NM Legal, P.A., Fort Lauderdale (withdrew after filing briefs), and Tracy B. Newmark and Natalie S. Kay of Kelley Kronenberg, Fort Lauderdale, for appellant.

Robert J. Moraitis and Peter M. Raimondi of Moraitis & Raimondi, LLP, Fort Lauderdale, for appellee.

GERBER, J.

The mother appeals from the circuit court's order granting the father's verified ex parte emergency motion to temporarily suspend the mother's overnight timesharing and/or to prevent the mother from removing the child from the jurisdiction. The mother also appeals from a non-evidentiary return hearing order which slightly modified the ex parte order.

The mother argues the circuit court's orders violated her due process rights where: (1) the mother was previously made aware of the father's allegations against her at an earlier hearing, and yet the circuit court verbally directed the father to file an ex parte emergency motion which could be granted without the mother having an opportunity to respond; and (2) after granting the father's ex parte emergency motion, the circuit court did not provide the mother with a promptly noticed evidentiary hearing at which she could contest the father's allegations.

We agree with both of the mother's arguments and reverse both orders.

## *Procedural History*

The father filed a motion for contempt alleging the mother had violated a prior order compelling the mother to take the four-year-old child to school on her timesharing days unless the child was sick or some other emergency existed. The father set a hearing on his contempt motion. Both parties and their counsel attended the hearing. The circuit court indicated its belief that it could not consider the father's contempt motion, because the mother had filed an appeal from the prior order, as well as a motion to stay the circuit court proceedings pending the disposition of that appeal.

The father's counsel then orally requested the circuit court to hear emergency matters which the circuit court could consider despite the mother's pending appeal. *See* Fla. R. App. P. 9.600(c)(1) ("In family law matters ... [t]he lower tribunal shall retain jurisdiction to enter and enforce orders ... necessary to protect the welfare and rights of any party pending appeal."). The circuit court asked if the father's counsel had notified the mother's counsel of the emergency matters before the hearing. After the father's counsel responded he had not, the circuit court replied:

> How about both counsels go outside, you advise her of the emergency. [Addressing the father's counsel] I mean, *you know you can file it as an ex parte emergency motion*, but try to inform her about it now. And it's something that we can go forward while we are all here dealing with that instead of the other motion. We'll deal with that now instead of the actual motion that it is set for. And if not, *you can just file it as an ex parte emergency motion and I'll deal with it as soon as you file it*.
>
> ....
>
> [Addressing the mother's counsel] So go outside and talk because *you know that [the father's counsel] can just walk to his office, drive to his office, file an ex parte emergency motion and I can deal with that without you guys being here*. Since you are here, I'm asking you guys to go outside and talk.

(emphases added).

The parties and their counsel stepped out of the courtroom as instructed, but returned a short time later. The father's counsel argued the emergency matters arose from information which he had learned

2

during the mother's deposition taken three weeks earlier. The father's counsel learned that during the mother's timesharing, instead of taking the child to school in Broward County, the mother had been taking the child to Orlando to stay with her at a man's home. However, the mother would not divulge the man's identity, background, or living arrangements.

The mother's counsel responded that the father's counsel had not noticed those emergency matters for hearing or by filing a petition. The mother's counsel also responded that no emergency existed, not only in substance, but also because the father's counsel had not raised those matters in the three weeks since the mother's deposition. A few minutes later, the following exchange occurred between the circuit court and the mother's counsel:

> COURT: It doesn't have to be an emergency matter, but it can, along with that and taking the child out of the county without agreement from the father, I think all of that combined, *I'm sure [the father's counsel] can write a nice emergency motion, ex parte emergency motion for me to address*.
>
> So we are here, so sometimes I think it's better to be here and talk things out before everything has to be put in writing and then hand it over to me to decide.
>
> ....
>
> MOTHER'S COUNSEL: Your Honor, without an opportunity to present evidence on the matter ... without my client having an opportunity to present evidence and have opportunity to be heard, I don't believe the Court can order emergency relief without it being --
>
> COURT: I'm not doing it today. I'm not doing it today. But you know that *[the father's counsel] can actually file it as an ex parte emergency motion*, which you would not receive notice for, and I would rule on my own in my chambers and then enter an order and that's when you would be advised.
>
> That's why I'm saying, we are here, he's made you aware of it, so if there's some form of you guys agreeing to something instead of *[the father's counsel] actually going through the process and filing this ex parte emergency motion* where you won't be part of the decision-making, that's why I asked you guys to go outside and talk to see if you can agree on

3

something instead of [*the father's counsel*] *having to go through the process of putting it in writing and then putting it in my hand, which he's not required to give you notice on ex parte emergency motion*, right?

MOTHER'S COUNSEL:  Understood.

COURT:  So that's why I was trying to give you time to go talk instead of leaving it up to me when [the father's counsel] properly does it in writing.  So maybe you want to go talk again after I made that part clear.

MOTHER'S COUNSEL:  Your Honor, I think we probably both agree that we are not going to make any progress on this --

COURT:  Okay.

MOTHER'S COUNSEL:  -- issue today.

COURT [addressing the father's counsel]:  *Then file your motion … and I will rule on it when it's in front of me.*

(emphases added).

Over the next few days after the hearing, the parties' counsel communicated as the circuit court had directed, but no resolution was reached.

Thirteen days after the hearing, the father filed his ex parte emergency motion to temporarily suspend the mother's overnight timesharing and/or to prevent the mother from removing the child from the jurisdiction.  As the father's counsel had mentioned at the hearing, the father's ex parte motion alleged the mother had "continue[d] to travel to Orlando with the child which includes several overnights per week."  Notably, the father's ex parte motion also alleged the child had told the father that "[she] sleeps in bed with [a grown man]" while in Orlando with the mother, and that the mother required the child to wear diapers during the four-hour drives back and forth to Orlando, causing the child to regress developmentally.  Thus, the father's ex parte motion alleged the father had "an immediate and well-founded fear for the child's health, safety, and welfare."

Twelve days after the father had filed his ex parte emergency motion, the circuit court entered an order granting the ex parte emergency motion.  The ex parte order pertinently provided:  "Until further order of the Court,

4

there shall be no overnight timesharing between [the mother] and minor child" and "[the mother] shall not remove the child from Broward County." However, the ex parte order allowed the mother to pick up the child from school during the week so long as she returned the child to the father each evening. The ex parte order further allowed the mother to pick up the child from the father on weekend mornings so long as she returned the child to the father each weekend evening.

The ex parte order also set a return hearing to occur ten days later on the circuit court's non-evidentiary uniform motion calendar. Both parties and their counsel appeared at the return hearing. The father's counsel requested the circuit court to extend the ex parte order for at least another month while the father's counsel continued his investigation to support a petition for timesharing modification which would be filed for the circuit court's later consideration.

The mother's counsel responded that the circuit court should vacate the ex parte order for three reasons: (1) no basis existed for the father to have filed an ex parte emergency motion when the matters upon which the father had based his motion had been raised at the prior hearing over one month earlier; (2) the father could not file a petition for modification in an attempt to retroactively cure the ex parte order's improper entry; and (3) the circuit court had not set the return hearing as an evidentiary hearing, but instead on the court's non-evidentiary uniform motion calendar, which deprived the mother of due process.

The circuit court replied that it would set a later evidentiary hearing at which the parties could testify regarding the matters upon which the father had based his ex parte emergency motion. But then the circuit court abruptly pivoted, offering to conduct the evidentiary hearing at that moment. The mother's counsel objected, arguing that because the circuit court had set the return hearing on its non-evidentiary uniform motion calendar, the mother's counsel was not prepared for an unnoticed evidentiary hearing, which would also deprive the mother of due process. The mother's counsel argued that if the circuit court was not going to vacate the ex parte order, the mother alternatively requested the court to modify the ex parte order to allow the mother to resume weekend overnight timesharing.

The father's counsel responded the father would agree to the mother resuming weekend overnight timesharing, so long as the mother did not remove the child from Broward County. The circuit court agreed to that modification. The circuit court also directed the parties to contact its

judicial assistant to set an evidentiary hearing regarding the matters upon which the father had based his ex parte emergency motion.

After the hearing, the circuit court entered its written order from the return hearing, allowing the mother to pick up the child from school each Friday and keep the child until that Sunday evening when she would return the child to the father. The return hearing order continued to prohibit the mother from removing the child from Broward County. The return hearing order otherwise incorporated by reference the ex parte order's remaining non-conflicting portions.

When the mother's counsel contacted the circuit court's judicial assistant to set the evidentiary hearing regarding the matters upon which the father had based his ex parte emergency motion, the earliest date available on the circuit court's calendar was four months later.

### *This Appeal*

The mother chose instead to file this appeal of the circuit court's ex parte order and its return hearing order. We have jurisdiction to consider the appeal of both orders. *See* Fla. R. App. P. 9.130(3)(c)(iii)b. (appeals to the district courts of appeal of nonfinal orders include those orders that "determine … in family law matters … the rights or obligations of a party regarding child custody or time-sharing under a parenting plan").

The mother argues the circuit court's orders violated her due process rights where: (1) the mother was previously made aware of the father's allegations against her at an earlier hearing, and yet the circuit court verbally directed the father to file an ex parte emergency motion which could be granted without the mother having an opportunity to respond; and (2) after granting the father's ex parte emergency motion, the circuit court did not provide the mother with a promptly noticed evidentiary hearing at which she could contest the father's allegations.

We agree with both of the mother's arguments. We will address each argument in turn.

First, "a motion seeking an ex parte temporary injunction—or for that matter, seeking almost any immediate ex parte relief—must demonstrate how and why providing reasonable notice *would actually accelerate, precipitate, or otherwise permit the threatened irreparable injury to occur*." *Smith v. Crider*, 932 So. 2d 393, 397 (Fla. 2d DCA 2006) (emphases added). Here, the father's contempt motion based on the mother's alleged violation of the prior timesharing order, and the father's arguments at the hearing

6

on his contempt motion, already had put the mother on notice of the grounds upon which he was seeking relief against the mother. Thus, the father did not reasonably show that filing an ex parte emergency motion thirteen days later, based on the same grounds, "would actually accelerate, precipitate, or otherwise permit the threatened irreparable injury to occur." *Id.*

Second, after the mother objected to the circuit court having set the return hearing on its non-evidentiary uniform motion calendar, the circuit court was unable to set a properly noticed evidentiary hearing regarding the matters upon which the father had based his ex parte emergency motion until four months later, thus depriving the mother of a prompt opportunity to be heard. *See Smith*, 932 So. 2d at 398 (where a trial court enters an order temporarily modifying custody of a child without affording prior notice to the opposing party based on the existence of an emergency situation, "an opportunity to be heard should be provided to the opposing party as soon thereafter as possible"); *Ashby v. Murray*, 113 So. 3d 951, 954 (Fla. 5th DCA 2013) ("[B]efore entering an emergency modification order, every reasonable effort should be made to ensure both parties have an opportunity to be heard. If this is not possible ... an opportunity to be heard should be provided as soon thereafter as possible.") (citation and internal quotation marks omitted). While we appreciate the very busy dockets of our trial court colleagues, we do not consider a four-month delay to obtain an evidentiary hearing regarding the matters upon which the father had based his ex parte emergency motion to have been "as soon thereafter as possible." *Id.*

The circuit court's abrupt attempt to conduct the evidentiary hearing immediately upon the mother's objection was not a reasonable solution either, as the mother did not have adequate notice and opportunity to be prepared to participate in an unnoticed evidentiary hearing. As our sister court stated in *Juliano v. Juliano*, 687 So. 2d 910 (Fla. 3d DCA 1997):

> While we believe that trial courts should have great discretion over their procedures, including the functioning of their motion calendars, ... [i]t is expected that motion calendar hearings are for the purpose of resolving matters which require little time and are limited to arguments of counsel. While there is nothing to prevent the trial court from hearing testimony in uncontested matters, or by agreement of all involved, testimony in disputed matters comes as a surprise at motion calendar. Accordingly, to avoid sandbagging of parties, if the court is to allow testimony in disputed motion calendar hearings, specific notice of such intention must be

given, with a sufficient interval to prepare and adequate opportunity to present contrary testimony prior to ruling.

*Id.* at 911; *cf. Hodge v. Babcock*, 340 So. 3d 521, 523 (Fla. 3d DCA 2022) (quashing order that had required the father to return the parties' minor child to the mother, because the trial court violated the father's due process right at the hearing which had produced this order, where the father came to court "expecting a one-hour evidentiary hearing on his motion, but instead found that his injunction motion had been set on the trial court's five-minute motions calendar").

### *Conclusion and Remand Directions*

Based on the foregoing, we reverse both the order granting the father's verified ex parte emergency motion to temporarily suspend overnight timesharing and/or to prevent the mother from removing the child from the jurisdiction, as well as the circuit court's return hearing order.

At this time, however, months have elapsed since the entry of the two orders on appeal, during which the parents presumably have obeyed those orders. Thus, although we reverse the two orders on appeal, we remand with directions that the two orders on appeal remain in effect, and that the circuit court must conduct an evidentiary hearing on the matters upon which the father had based his ex parte emergency motion within twenty days from the issuance of our mandate, unless both parties agree to hold a hearing at a later date. *See Smith*, 932 So. 2d at 400. At that hearing, the father must present competent, substantial evidence supporting his motion. *See id.*

We also remand with directions for the case to be reassigned to a different judge. Despite the father lacking a basis to file an ex parte emergency motion to obtain the relief which he was seeking against the mother, the circuit court departed from its neutral role by repeatedly suggesting at the initial hearing—on eight separate occasions emphasized above—that the father could, and ultimately should, file such an ex parte emergency motion. The circuit court also appeared to use the possible granting of such an ex parte emergency motion as leverage to cause the mother to discuss resolving the matter by agreement, rather than providing the mother with a prompt opportunity to respond with evidence. Such actions were improper. *See* Fla. Code of Jud. Conduct, Canon 3.B.(7)(a) ("A judge shall not initiate, permit, or consider ex parte communications, or consider other communications made to the judge outside the presence of the parties concerning a pending or impending proceeding except that … [w]here circumstances require, ex parte

8

communications for … emergencies that do not deal with substantive matters or issues on the merits are authorized, provided … the judge reasonably believes that no party will gain a procedural or tactical advantage as a result of the ex parte communication, and … the judge makes provision promptly to notify all other parties of the substance of the ex parte communication and allows an opportunity to respond.").

Neither the parties nor the newly-assigned judge should interpret our reversal in this appeal as a comment on the parties' respective positions on the merits of the matters upon which the father had based his ex parte emergency motion.  We take no such position, which would be premature.

*Orders reversed; remanded with directions.*

GROSS and CONNER, JJ., concur.

\* \* \*

***Not final until disposition of timely filed motion for rehearing.***

9